IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FELICIA LUSEGA,

        Plaintiff,

v.

ALBRECHT & ALBRECHT, INC., and
DOROTHY ALBRECHT,

        Defendants.

CIVIL ACTION NO.

1:06-CV-0809-JEC

FILED IN CLERK'S OFFICE
U.S.D.C.  Atlanta

JUL 3 1 2007

JAMES N. HATTEN Clerk
By. _____
Deputy Clerk

## O R D E R   &   O P I N I O N

This case is presently before the Court on defendants' Motion for Summary Judgment [22]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion for Summary Judgment [22] should be **GRANTED**.

### BACKGROUND

This is an employment discrimination case. Defendants own a childcare center known as Kids Unlimited. (Pl.'s Statement of Facts ("Pl.'s Facts") [23] at ¶ 8; Lusega Dep. at 25.) They hired plaintiff to work as a pre-kindergarten assistant at Kids Unlimited in September, 1999. (Defs.' Statement of Undisputed Material Facts

("Defs.' Facts") [22] at ¶ 1.)[1]  Plaintiff indicates that she is African-American.  Since that time, plaintiff has received several promotions and raises.  (*Id.* at ¶¶ 2-3.)  She is now the Business Manager of the center.  (Pl.'s Facts [23] at ¶ 7.)

Plaintiff contends that, beginning in 2005, she was subjected to racial harassment at Kids Unlimited.  (Compl. [1] at ¶¶ 11-13.) Specifically, plaintiff claims that defendant Dorothy Albrecht and several other Kids Unlimited employees made a number of racially offensive statements in plaintiff's presence.  (*Id.*)  Plaintiff further alleges that defendant retaliated against her after she protested defendant's refusal to hire two qualified Hispanic employees.  (*Id.* at ¶¶ 14-16.)

Plaintiff filed this action in April, 2006 as a result of the alleged harassment and retaliation.  (*Id.*)  In her Complaint, plaintiff asserts claims for hostile work environment discrimination and retaliation in violation of 42 U.S.C. § 1981.  (*Id.* at ¶¶ 18-31.) She also asserts a state law claim for negligent supervision and retention.  (Compl [1] at ¶¶ 32-35.)  Defendants have filed a motion for summary judgment on all of plaintiff's claims, which is presently before the Court.

---

[1]  Plaintiff did not respond to defendant's Statement of Material Facts [22].  Defendant's facts are therefore deemed admitted pursuant to Local Rule 56.1(B)(2)(a).

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."" FED. R. CIV. P. 56(c).  A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine when the evidence is such that  a reasonable jury could return a verdict for the nonmovant.  (*Id.* at 249-50.)

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  (*Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).)

3

The movant bears the initial responsibility of asserting the basis for his motion.  (*Id.* at 323.)  However, the movant is not required to negate his opponent's claim.  The movant may discharge his burden by merely "'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case."  (*Id.* at 325.)  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "'specific facts showing that there is a genuine issue for trial.'" (*Id.* at 324.)  While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48 (1986).

## II.  Plaintiff's Hostile Work Environment Claim

To prevail on her hostile work environment claim, plaintiff must show that:  1) she belongs to a protected group; 2) she has been subjected to unwelcome harassment; 3) the harassment was based on a protected characteristic; 4) the harassment was severe and pervasive; and 5) there is a basis for holding defendant liable for the

4

environment.[2]  *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).  Defendants contend that plaintiff cannot establish the fourth element--severe and pervasive harassment.  (Defs.' Mot. for Summ. J. [22] at 11-12.)

To be actionable, harassment must be "'sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." (*Id.*) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  This requirement contains both an objective and a subjective component.  (*Id.* at 1276.)   That is, plaintiff must establish "not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would [so] perceive the environment." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 583 (11th Cir. 2000). To determine whether harassment is objectively severe and pervasive, the Court considers: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th

---

[2] The elements of a hostile work environment claim under § 1981 are the same as the elements of a similar claim under Title VII, 42 U.S.C. 2000e-2, *et seq.* *Standard v. A.B.E.L. Serv., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998)("Both of these statutes have the same requirements of proof and use the same analytical framework").

AO 72A
(Rev.8/82)

Cir. 1999); *Hulsey v. Pride Rest., LLC*, 367 F.3d 1238, 1247-48 (11th Cir. 2004).

Plaintiff alleges the following facts in support of her hostile work environment claim:

(1) Cindy Abernathy, a co-worker, frequently made comments regarding plaintiff's accent and pronunciation of words like "bread" and "red";

(2) On one occasion, Abernathy took a chocolate doughnut hole, held it at her breast, and said, "Does this remind you of anything?";

(3) Plaintiff often heard co-workers discussing topics that she perceived to be racially discriminatory, including political commentary addressing Coretta King's funeral, statements questioning why Angelina Jolie would want to have a baby in Africa, and a discussion about why Puff Daddy did not make a donation after Hurricane Katrina;

(4) Defendant Albrecht told other employees that plaintiff was a "piss off factor"; and

(5) Sometime in January, 2006, plaintiff overheard defendant Albrecht say to plaintiff's co-worker Ardyn Good: "You need to tell Claire you're not her nigger." Plaintiff asked Albrecht to repeat the statement, which Albrecht did. Albrecht then said: "Ooh. Look what you made me say."

(Lusega Dep. at 79, 81, 86-88, 91, 105-113.)[3]

As an initial matter, the Court notes that plaintiff's allegations consist entirely of offensive statements. A hostile work

---

[3] Plaintiff also alleges that she recommended hiring a Hispanic applicant for a job, to which Albrecht responded: "We can't hire all Mexicans because our parents won't like that." (Lusega Dep. at 94.) This comment is not based on plaintiff's race, and is therefore irrelevant to her discrimination claim. However, the Court will consider the comment in addressing plaintiff's retaliation claim.

environment generally does not arise from the "mere utterance of an
. . . epithet which engenders offensive feelings in an employee."
*Harris,* 510 U.S. at 21.    To be actionable, racially offensive
statements must be "'so commonplace, overt and denigrating that they
create[] an atmosphere charged with racial hostility.'"   *Edwards v.
Wallace Cmty. Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995)(quoting *EEOC
v. Beverage Canners, Inc.,* 897 F.2d 1067, 1068 (11th Cir. 1990)).
There is no evidence that such an atmosphere existed at Kids
Unlimited.    Indeed, plaintiff testified that she has had, and
continues to have, a good rapport with Albrecht and her co-workers.
(Lusega Dep. at 62.)   Neither Albrecht nor any other Kids Unlimited
employee ever expressed any hostility or ill-will towards plaintiff.
(*Id.* at 62, 94.)

     In addition, applying the relevant factors, the above statements
are not particularly severe.   Many of the statements are not even
accurately described as racial.  For example, Albrecht's comment that
plaintiff was a "piss-off factor" has nothing to do with plaintiff's
race.   General comments about events in the media, such as Angelina
Jolie's decision to have her baby in Africa or Puff Daddy's failure
to make a contribution to Hurricane Katrina, are similarly too
ambiguous to be interpreted as racially hostile.  *See Gupta,* 212 F.3d
at 583-84 (finding ambiguous statements irrelevant to plaintiff's
hostile work environment claim).  The most severe comment--Albrecht's

statement to plaintiff's co-worker to "Tell Claire you're not her nigger"--occurred only once, and was not directed at plaintiff. (Lusega Dep. at 81.) *Compare Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 509 (11th Cir. 2000)(concluding that fifteen incidents of sexual harassment over the course of four months, including several instances of unwanted massages and touching, constituted severe and pervasive harassment).

Nor is there any evidence that the statements were made in an intimidating manner, or accompanied by physical threats. Albrecht expressed regret over the most serious comment, stating that she "hoped she hadn't made [plaintiff] mad." (*Id.* at 109.) *Compare Miller,* 277 F.3d at 1276 (finding sufficient evidence that racial epithets were severe where plaintiff's foreman called him "Spic" "wetback" and "Mexican motherfucker" in an intimidating manner while arguing with plaintiff or berating him for his job performance). As to the other statements, plaintiff acknowledges that they were intended as "jokes" and made in the context of "joking." (*Id.* at 93-96, 105-106, 119.) *See Oncale v. Sundowner Offshore Serv., Inc.,* 523 U.S. 75, 82 (1998) (instructing courts to consider the social context to distinguish between innocuous behavior and severe and pervasive harassment) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)("simple teasing, offhand comments, and isolated incidents (unless extremely serious) [do] not amount to discriminatory changes

8

in the terms and conditions of employment") (internal citations omitted). Furthermore, plaintiff concedes that the statements did not affect her ability to do her job. (Lusega Dep. at 114, 129.)

Cases involving more serious allegations than plaintiff's are routinely the subject of summary judgment orders in this Circuit. *See, e.g., Smith v. Beverly Health and Rehab. Serv., Inc.,* 978 F. Supp. 1116, 1122 (N.D. Ga. 1997) (Hull, J.); *Barrow v. Georgia Pac. Corp.,* 144 Fed. Appx. 54, 57-58 (11th Cir. 2005) (holding that racial symbols and slurs, including the presence of rebel flags and the letters "KKK" in the workplace, in addition to several other comments referring to plaintiff as "nigger" and "boy," did not constitute "sufficiently severe or pervasive" harassment to alter the conditions of plaintiff's employment); and *Austin v. City of Montgomery,* 196 Fed. Appx. 747, 752 (11th Cir. 2006)("While [plaintiff] alleged [defendant] made racial comments to her that she found offensive, these remarks were not frequent or severe enough to constitute a hostile work environment.").[4] In *Smith,* for example, the plaintiff asserted a Title VII hostile work environment claim based on several racially charged statements, including his supervisor's comments that: 1) "all that mooly can do is make coffee and bring it to me";

---

[4] *Barrow* and *Austin* are unpublished decisions, and are thus persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2.

9

2) "these goddamn Georgia niggers think they own Georgia"; and 3) "where I come from niggers knew their place."[5] *Smith,* 978 F.Supp. at 1121-22.    Citing well-settled Eleventh Circuit law concerning "offensive utterances," Judge Hull concluded that plaintiff's allegations did not rise to the level of severe and pervasive racial harassment.  (*Id.* at 1120, 1122 (citing *Edwards,* 49 F.3d at 1521).)

The Court agrees with Judge Hull's reasoning, and concludes that the alleged statements in this case, like those in *Smith*, do not constitute severe and pervasive racial harassment.    Accordingly, defendants' motion for summary judgment on plaintiff's hostile work environment claim is **GRANTED**.

## III. Plaintiff's Retaliation Claim

The Eleventh Circuit has concluded that § 1981 supports a cause of action for retaliation based on a plaintiff's opposition to race discrimination.    *Tucker v. Talladega City Sch.,* 171 Fed. Appx. 289, 294 (11th Cir. 2006)(citing *Andrews v. Lakeshore Rehab. Hosp.,* 140 F.3d 1405, 1412-13 (11th Cir. 1998)).    However, the Court has not precisely defined the contours of a § 1981 retaliation claim.  (*Id.*) See also *Adams v. Cobb Co. Sch. Dist.,* 2007 WL 1720430 *4 (11th Cir. 2007)("whether the elements of Title VII and § 1981 retaliation

---

[5] The plaintiff in *Smith* also alleged that his employer had placed a post-it note on a patient's chart directing that no black males care for the patient, per the patient's request.  *Smith,* 978 F.Supp. at 1121-22.

claims are the same is an open question in this circuit") (citing *Bass v. Orange County Bd. of Comm'rs,* 256 F.3d 1095, 1120, n. 10 (11th Cir. 2001)).   The *Tucker* Court applied the Title VII retaliation framework, but noted that it was an "open question" whether the elements of § 1981 and Title VII retaliation claims are always the same.   (*Id.*)   As the Circuit Court previously explained, "the concerns underlying a retaliation action brought pursuant to Title VII and § 1981 might, in some circumstances, be different," particularly "where the retaliation alleged is not based on the race of the complainant."   *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1463, n. 4 (11th Cir. 1998)(citing *Little v. United Tech.,* 103 F.3d 956 (11th Cir. 1997)).

In this case, however, plaintiff's allegations *do* involve retaliation based on race, specifically, retaliation based on her complaints about practices that she perceived to be racially discriminatory.   (Compl. [1] at ¶¶ 27-31.)   Defendants have not suggested any basis for applying a different analysis to these allegations than the framework ordinarily applicable to Title VII retaliation claims.   (Def.'s Mot. for Summ. J. [22] at 14.) Accordingly, the Court analyzes the claim under the Title VII retaliation framework.   *See Tucker,* 171 Fed. Appx. at 296.

In order to prevail on her § 1981 retaliation claim under the Title VII framework, plaintiff must demonstrate that: 1) she engaged

11

in protected conduct; 2) she suffered an adverse action; and 3) a causal connection exists between the two events. *Olmsted,* 141 F.3d at 1460; *Gupta,* 212 F.3d at 587. Plaintiff claims that she engaged in protected conduct when she protested defendants' refusal to hire qualified Hispanic employees based on their race. (Compl. [1] at ¶ 28.) Plaintiff also suggests that she engaged in protected conduct when she filed this lawsuit. (Lusega Dep. at 43-44.) Assuming both of those actions qualify as protected conduct, plaintiff's retaliation claim still fails because there is no evidence that defendants have taken any adverse action against plaintiff.

The Supreme Court recently clarified the adverse action requirement in *Burlington N. & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405 (2006). In that case, the Court explained that Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington,* 126 S. Ct. at 2414. Emphasizing the importance of separating significant from trivial harms, the Court stated:

> In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'

(*Id.* at 2415 (citing *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C. Cir. 2006)).)

Plaintiff was unable at her deposition to identify any

12

significant adverse action that occurred as a result either of her filing this lawsuit or of her complaining about discrimination against Hispanic workers.   Plaintiff maintained (and continues to maintain) the same position, with the same salary and benefits, following her comment about Hispanic workers and her decision to file the lawsuit.   (Def.'s Facts [22] at ¶ 29; Pl.'s Facts [23] at ¶ 7.) In addition, Albrecht has continued to:  1) accommodate plaintiff's schedule and leave requests; 2) encourage plaintiff to further her education and allow her to study while on the clock; and 3) allow plaintiff to buy discount meats through the center's distributor. (Lusega Dep. at 65-72.)  Plaintiff even concedes that Albrecht had a legitimate reason to fire her in October, 2005--after plaintiff's comment about Hispanic workers--when Albrecht became aware of plaintiff's arrest for shoplifting, which plaintiff had not previously disclosed.  (*Id.* at 39-42.)  Instead of firing plaintiff, however, Albrecht reassured her that the shoplifting incident would not affect her job at Kids Unlimited.  (*Id.*)

Plaintiff implies that her job duties have been reduced since she filed this lawsuit, but she cannot identify any specific duties that defendant has taken away from her.   (*Id.* at 43-45.) Furthermore, she states that she continues to enjoy her job and that she is still able to function at a high level in her position as business manager.  (*Id.* at 55, 62.)  Plaintiff also vaguely suggests

13

that the atmosphere at Kids Unlimited is different since she filed the lawsuit, and that her co-workers are not as friendly with her as they were before.   (Lusega Dep. at 136, 153-54.)   Plaintiff's co-workers may indeed be hesitant to joke with her, or to speak to her as freely as they once did.   But there is no legal remedy for the social ramifications of plaintiff's decision to file a federal lawsuit based primarily on casual workplace conversation.

As plaintiff has not produced any evidence that she suffered an adverse action, as defined by *Burlington,* she cannot prevail on her retaliation claim.   Accordingly, defendants' motion for summary judgment on this claim is **GRANTED**.

## IV.   Plaintiff's State Law Claim

When a federal court has dismissed all of the federal claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining state law claims.   *See McCulloch v. PNC Bank, Inc.,* 298 F.3d 1217, 1227 (11th Cir. 2002) (citing 28 U.S.C. § 1367(c)(3)).   Indeed, the Supreme Court has directed lower federal courts to avoid, "needless decisions of state law," especially when federal claims are dismissed before trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).   Here, the Court has dismissed all of plaintiff's federal claims, and the remaining claims involve relatively complex decisions of state law. Accordingly,   the   Court   **DISMISSES   without   prejudice** plaintiff's

14

remaining state law claims.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion for Summary Judgment [22].


SO ORDERED, this $\underline{30}$ day of July, 2007.


_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)